1    Craig A. Hansen (CA Bar No. 209622)
       Email: craig@hansenlawfirm.net
2    Stephen C. Holmes (CA Bar No. 200727)
       Email: steve@hansenlawfirm.net
3    Philip E. Yeager (CA Bar No. 265939)
       Email: phil@hansenlawfirm.net
4    Collin D. Greene (CA Bar No. 326548)
       Email: collin@hansenlawfirm.net
5    HANSEN LAW FIRM, P.C.
     75 E. Santa Clara Street, Suite 1250
6    San Jose, CA 95113-1837
     Telephone: (408) 715 7980
7    Facsimile: (408) 715 7001

8    Attorneys for Plaintiffs
     Temujin Labs Inc., a Delaware corporation, and
9    Temujin Labs Inc., a Cayman Islands corporation.

10                     **UNITED STATES DISTRICT COURT**

11                  **NORTHERN DISTRICT OF CALIFORNIA**

12                     **SAN FRANCISCO DIVISION**

13

| | |
|---|---|
| 14   TEMUJIN LABS INC., a Delaware corporation, and TEMUJIN LABS INC., a Cayman Islands corporation, | CASE NO.: |
| 15 | |
| 16                    Plaintiffs, | **COMPLAINT FOR:** |
| 17          v. | **1. TRADE SECRET MISAPPROPRIATION AND MISUSE UNDER 18 U.S.C. § 1836 ET SEQ.,** |
| 18   TRANSLUCENCE RESEARCH, INC., a Delaware corporation, BENJAMIN FISCH, CHARLES LU, BENEDIKT BÜNZ, NATHAN MCCARTY, FERNANDO KRELL, PHILIPPE CAMACHO CORTINA, BINYI CHEN, AND LUOYUAN (ALEX) XIONG, and DOES 1-20, inclusive, | **2. TRADE SECRET MISAPPROPRIATION AND MISUSE UNDER CAL. CIV. CODE §§ 3426 ET SEQ.,** |
| 19 | **3. TRADE LIBEL,** |
| 20 | **4. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS,** |
| 21 | **5. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE,** |
| 22                    Defendants. | **6. UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.,** |
| 23 | **7. CIVIL CONSPIRACY,** |
| 24 | **8. DECLARATORY RELIEF, DAMAGES AND INJUNCTIVE RELIEF.** |
| 25 | |
| 26 | **DEMAND FOR JURY TRIAL** |

27

28

Plaintiffs Temujin Labs Inc., a Delaware corporation ("Temujin Delaware") and Temujin Labs Inc., a Cayman Islands corporation ("Temujin Cayman") hereby allege for their Complaint against defendants Translucence Research, Inc., Benjamin Fisch, Charles Lu, Benedikt Bünz, Nathan McCarty, Fernando Krell, Philippe Camacho Cortina, Binyi Chen, and Luoyuan (Alex) Xiong, and Does 1 through 20, as follows, upon information and belief:

**NATURE OF THE CASE**

1.      Plaintiffs Temujin Delaware and Temujin Cayman (collectively, "Temujin") together comprise a successful financial technology business developing and using software products and technology. Defendants are (1) a company established by several former employees and consultants to Temujin Delaware, (2) a former consultant and Chief Technical Officer of Temujin Delaware, (3) a former employee and Chief Executive Officer of Temujin Delaware, (4) a former consultant and Chief Scientific Officer of Temujin Delaware, and (5) other former employees, consultants, and advisors to Plaintiffs.

2.      Plaintiffs are informed and believe, and based thereon allege, after the untimely death of Temujin's co-founder John Powers in July 2020, the individual Defendants Lu, Fisch and Bünz hatched a plan to steal and transfer intellectual property created, owned, licensed by or otherwise belonging to Temujin Delaware to an entity that they would later own and control, which turned out to be Defendant Translucence Research, Inc. ("Translucence"). In connection with that plan, they took advantage of their executive offices in Temujin Delaware, and the prestige and authority associated with them, and conspired among themselves and with others to destroy the credibility of the surviving co-founders, defame the very technology they were hired to create, unlawfully open source highly sensitive Temujin codes, stir fear and foster mistrust among rank-and-file.

3.      After shaking Temujin Delaware to the core, Lu, Fisch and Bünz quit Temujin and incorporated Defendant Translucence the next day. Thereafter, Defendant Translucence together with the individual Defendants Lu, Fisch and Bünz have continued to conspire and scheme together in conjunction with the other individual Defendants McCarty, Krell, Camacho, Chen, and Xiong, and others, to further obstruct, disrupt and interfere with Plaintiffs' business,

including to (a) further spread frivolous and false claims regarding Plaintiffs, their business, technology, property, and personnel, (b) misappropriate Plaintiffs' trade secrets, (c) interfere with contracts and agreements between Plaintiffs and third parties, and (d) interfere with and obstruct Plaintiffs' relationships with investors and business partners, which have caused and continue to cause substantial harm to Plaintiffs.

4.      This is a case of predatory and predaceous corporate behavior, motivated by naked and objectional greed of Lu, Fisch and Bünz, via depraved and unscrupulous methods, and loomed on the backdrop of misogyny. Plaintiffs are entitled to injunctive relief redressing these wrongs, as well as monetary, exemplary, and punitive damages.

**PARTIES**

5.      Plaintiff Temujin Labs Inc., a Cayman Islands corporation ("Temujin Cayman") is a foreign company organized under the laws of the Cayman Islands.

6.      Plaintiff Temujin Labs Inc., a Delaware corporation ("Temujin Delaware") is registered with the California Secretary of State and doing business in Santa Clara County. It is wholly owned by Temujin Cayman.

7.      Plaintiffs are informed and believe, and based thereon allege, Defendant Translucence Research, Inc., a Delaware corporation, ("Translucence") is registered with the California Secretary of State and doing business in the County of San Francisco.

8.      Defendant Charles Lu ("Lu") is the former Chief Executive Officer ("CEO") of Temujin Delaware who, on information and belief, resides in Bellevue, Washington.  Lu first joined Temujin Delaware on July 5, 2019 as CEO pursuant to a letter agreement dated July 1, 2019. He resigned from Temujin Delaware as CEO and as an employee on October 21, 2020. Plaintiffs are informed and believe, and based thereon allege, that Lu is one of the founders of Translucence.

9.      Defendant Benjamin Fisch ("Fisch") is a former consultant to Temujin Delaware who, on information and belief, resides in San Francisco, California. Fisch first joined Temujin Delaware pursuant to a Consulting Agreement and parallel advisory agreement, effective July 5, 2019, with the unofficial title of Chief Technical Officer. He resigned from Temujin Delaware as

a consultant and advisor on October 21, 2020. Plaintiffs are informed and believe, and based thereon allege, that Fisch is one of the founders of Translucence.

10.   Defendant Benedikt Bünz ("Bünz") is a former consultant to Temujin Delaware who, on information and belief, resides in Stanford, California. Bünz first joined Temujin Delaware pursuant to a Consulting Agreement and parallel advisory agreement, effective July 5, 2019, with the unofficial title of Chief Scientist. He resigned from Temujin Delaware as a consultant and advisor on October 21, 2020. Plaintiffs are informed and believe, and based thereon allege, that Bünz is one of the founders of Translucence.

11.   Defendant Nathan McCarty ("McCarty") is a former employee of Temujin Delaware, who, on information and belief, resides in Lexington, Kentucky.  McCarty first joined Temujin Delaware as a System Engineer on June 22, 2020, pursuant to an employment offer letter signed on June 1, 2020.  He resigned from Temujin Delaware on November 5, 2020. Plaintiffs are informed and believe, and based thereon allege, that McCarty is working with Translucence.

12.   Defendant Fernando Krell ("Krell") is a former consultant of Temujin Delaware, who, on information and belief, resides in Santiago, Chile. Krell first joined Temujin Delaware as a Senior Cryptography Engineer on July 15, 2019, pursuant to a Consulting Agreement. He resigned from Temujin Delaware on November 3, 2020. Plaintiffs are informed and believe, and based thereon allege, that Krell is working with Translucence.

13.   Defendant Philippe Camacho Cortina ("Camacho") is a former consultant of Temujin Delaware, who, on information and belief, resides in Santiago, Chile. Camacho first joined Temujin Delaware as a Senior Cryptography Engineer, pursuant to a Consulting Agreement and parallel advisory agreement effective October 25, 2019. He resigned from Temujin Delaware on November 3, 2020. Plaintiffs are informed and believe, and based thereon allege, that Camacho is working with Translucence.

14.   Defendant Binyi Chen ("Chen") is a former employee of Temujin Delaware, who, on information and belief, resides in Sunnyvale, California. Chen first joined Temujin Delaware on June 7, 2020, as a Cryptography Engineer pursuant to an offer of employment dated May 18, 2020 and Employee Invention Assignment and Confidentiality Agreement dated May 21, 2020.

1    He resigned from Temujin Delaware on October 30, 2020. Plaintiffs are informed and believe,

2    and based thereon allege, that Chen is working with Translucence.

3         15.    Defendant Luoyuan (Alex) Xiong ("Xiong") is a former employee of Findora

4    Development Pte. Ltd. of Singapore, who, on information and belief, resides in Singapore. Xiong

5    first joined Findora Development Pte. Ltd on August 24, 2020, as a Cryptography Engineer

6    pursuant to an Employment Agreement signed on August 17, 2020. He resigned from Findora

7    Development Pte. Ltd on October 22, 2020. Plaintiffs are informed and believe, and based

8    thereon allege, that Xiong is working with Translucence.

9         16.    Defendant Does 1 through 20, inclusive, are sued herein under fictitious names

10   because their true names, capacities, and the extent of their involvement are unknown to Plaintiffs

11   at this time. When their true names, capacities, and the extent of their involvement are

12   ascertained, Plaintiffs will amend this Complaint. Plaintiffs are informed and believe, and based

13   thereon allege, that each of the fictitiously named defendants is responsible in some manner for

14   the occurrences herein alleged and for damages suffered by Plaintiffs.

15        17.    Plaintiffs are informed and believe, and based thereon allege, that Lu, Fisch, Bünz,

16   McCarty, Krell, Camacho, Chen, and Xiong (collectively, the "individual Defendants"), are each

17   an adult residing or doing business in the state of California.

## JURISDICTION AND VENUE

19        18.    This Court has subject matter jurisdiction over the federal trade secret claim

20   pursuant to 18 U.S.C. § 1836 et seq. and 28 U.S.C. § 1331.

21        19.    This Court has supplemental jurisdiction over the state law claims alleged in this

22   Complaint pursuant to 28 U.S.C. § 1367.

23        20.    Personal jurisdiction is proper as to each Defendant because: (1) each Defendant

24   purposefully availed themselves of the benefits of the State of California; (2) the controversy is

25   related to and arises out of their contacts with the State of California; and (3) the assertion of

26   personal jurisdiction comports with fair play and substantial justice.

27        21.    As set forth above, on information and belief, several Defendants including

28   Defendants Translucence, Fisch, Bünz, and Chen reside in this Judicial District and Defendant

Translucence operates in this Judicial District. A substantial part of the events giving rise to the claims alleged in this Complaint occurred in the City and County of San Francisco. Venue therefore lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2), (c) and (d).

## DIVISIONAL ASSIGNMENT

22.     A substantial part of the events giving rise to the claims alleged in this Complaint occurred in the City and County of San Francisco. For the purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b), this Action will be assigned on a districtwide basis.

## TEMUJIN AND ITS BUSINESS

23.     Temujin Cayman was incorporated in July 2019 under the laws of the Cayman Islands.

24.     Temujin Delaware was incorporated in July 2019 in the state of Delaware.

25.     Temujin Delaware and Temujin Cayman together comprise a successful financial technology business developing and using software products and technology. The business designs, develops, offers, and implements cryptographical secure managed data and transaction services and related products. The products and services and business know-how include a fully-managed, "zero knowledge based" ledger database, a peer-to-peer lending platform, financial regulatory platform, a security issuance and transactional platform, a selective disclosure identity system, a commercial banking ledger system, a zero knowledge data warehouse, a zero knowledge rollup ("ZKRollup") and various associated systems. Plaintiffs' products and services facilitate online transaction processing in a way that is auditable—through a public and decentralized process—but also confidential. Because the processes are auditable, and yet do not sacrifice user privacy, the Plaintiffs' products and services represent a significant advancement in the digital transaction processing space.

26.     Plaintiffs' products and services rely on blockchain-based technology. The term "blockchain," in this context, means that transactions are verified in a decentralized manner by market participants who run software that confirms and records the transactions. Blocks of verified transactions are periodically added to a ledger, and hence the term blockchain developed

1   to describe the ledger.

2   <u>**DEFENDANTS' INTERFERENCE WITH TEMUJIN'S BUSINESS**</u>

3      27.     Plaintiffs are informed and believe, and based thereon allege, that Defendant

4   Translucence Research, Inc. was incorporated in Delaware on October 22, 2020, the day after

5   Defendants Lu, Fisch and Bunz resigned from Temujin Delaware, as part of their scheme to

6   obstruct, harm, steal from, and, ultimately, replace Temujin Delaware and its business.

7      28.     Plaintiffs are informed and believe, and based thereon allege, that Translucence

8   has acted in concert with the individual Defendants to obstruct, harm, steal from and replace

9   Temujin Delaware in several ways, including but not limited to the following:

10              a.   Unlawfully misappropriating, misusing, and capitalizing on Plaintiffs' property

11                   and information, including but not limited to their trade secrets and intellectual

12                   property;

13              b.   Making false statements about the Plaintiffs and the business, operations,

14                   technology, and personnel of the Plaintiffs;

15              c.   Intentionally interfering with Plaintiffs' contracts with third parties;

16              d.   Intentionally interfering with Plaintiffs' prospective economic advantage with

17                   third parties; and

18              e.   Interfering with Plaintiffs' relationships with their advisors, business partners,

19                   and investors.

20      29.     Before leaving Temujin, the individuals engaged in a pattern and practice designed

21   to poison Temujin in the eyes of its current customers and employees, business contacts, and

22   investors, and to destroy company morale, development, growth, operations, reputation, and

23   goodwill.  On information and belief, the individual defendants engaged in these acts for the

24   purpose of harming Temujin, knowing that they intended to leave Temujin and form a competing

25   enterprise.

26      30.     By way of example, during Temujin's critical "testnet period" (i.e., the later stages

27   of its developmental process), Temujin's Amazon Web Service ("AWS") was shutdown and its

28   developmental data had changed.  On information and belief, these changes were made by Lu as

an act of sabotage of Temujin's critical developmental data.  Temujin is further informed and believes that, at the time that the sabotage occurred, Lu's father, Bin Lu, was a senior executive of AWS with intimate knowledge of its systems and processes.  Temujin is presently investigating whether, and to what extent, Bin Lu assisted Charles Lu by helping him cover up the sabotage and evade AWS' monitoring operations.

31.     By way of further example, before Lu left his job, he demanded that Temujin pay him $5 million in order to prevent him from leaving the company and spreading false information about its founders.  On information and belief, following his departure from Temujin, defendant Lu made good on his threat, and proceeded to spread false and malicious rumors about the Temujin founders, including that they were engaged in sex-trafficking, selling drugs, were Chinese spies, or members of the Chinese mafia.  On further information and belief, defendant Lu further spread malicious lies about Findora, including that Findora was a "scam," was being investigated by the FBI and SEC, and would never launch its main applications because it lost its head engineer who joined Translucence.

32.     Before his departure from Temujin, Defendant Fisch demonstrated his capacity to lie and manipulate Temujin in order to advance his own personal, professional, and academic goals.  For example, Fisch asked Temujin to support his academic research to help him successfully obtain the position of assistant professor in a reputable university.  In order to induce Temujin to commit a cryptography engineer to help him develop a prototype and conduct associated research—all of which was outside of Temujin's business scope and operations—Fisch falsely told Temujin that after receiving the teaching position, he could immediately leave the school for three years and return to Temujin as a full-time CTO.  He defrauded Temujin to invest a lot of money and engineering manpower to assist his academic research, but in the end he did not fulfill his obligations as agreed.

33.     As a further act of internal sabotage, during the tenure of Temujin as CEO, Lu spread rumors in the workplace that a female employee was not a virgin, which caused mental and emotional anguish to the female employee. While Temujin comforted and compensated the aggrieved employee, Lu's behavior left a scar on Temujin's employee morale and goodwill. At

that time, Lu also said several demeaning things to many Temujin employees including that Stanford's student entrepreneurship financing is very easy; and that if one project has scammed all the money from a project, you can start the second project and continue to raise money. On information and belief, Lu's purpose of doing these two things was to frighten employees and ruin company culture.

34.     Defendants' acts to internally sabotage Temujin prior to their departure were persistent and pervasive. For example, in order to dehumanize its employees and damage corporate morale, defendant Fisch once threw a bottled water at an early founding team member in the office, frightening them from ever returning to the office again. This was one of several acts taken by the individual defendants to encourage early employees to leave the company. After the death of John Powers, defendant Fisch fabricated the story of a disagreement between Powers and another co-founder in order to create the false appearance of internal strife between the Temujin founders. On information and belief, the individual defendants engaged in these acts for the purposes of harming Temujin and weakening it as a future competitor of Translucence.

## UNLAWFUL REMOVAL, MISAPPROPRIATION, AND MISUSE OF PLAINTIFFS' INFORMATION, FILES, AND PROPERTY

35.     Plaintiffs are informed and believe, and based thereon allege, that between about September 2020 and November 2020, the individual Defendants, as well as other employees, consultants and advisors to the Plaintiffs unlawfully downloaded, copied and removed information, electronic files and other property belonging to the Plaintiffs. On further information and belief, such actions involved conspiring with then current Temujin employees to unlawfully and covertly download, without Plaintiffs' knowledge or authorization, Temujin codes, files, and systems from the Google Drive cloud storage system and/or GitHub and later using the stolen IP to promote Translucence in the eyes of its investors.

36.     On information and belief, former employees, Nathan McCarty, Fernando Krell, Philippe Camacho, Binyi Chen and Luoyan (Alex) Xiong and other former employees, during their final period in the company's tenure and while still receiving Temujin's salary, used their positions at Temujin, and their access to Temujin's systems and operations, to assist Translucence

in developing its own operations and in seeking financing. On further information and belief, after Fernando Krell resigned, he continued to take measures to retain backdoor access to certain repositories of Temujin's GitHub in an attempt to steal research and development results.

37.    Plaintiffs are informed and believe, and based thereon allege, that the individual Defendants downloaded, copied and removed information, electronic files and other property belonging to the Plaintiffs to use the same in starting, developing, and/or operating Translucence, in order to obstruct, disrupt and interfere with Plaintiffs' business.

38.    Plaintiffs are further informed and believe, and based thereon allege, that the actions of Defendants are the culmination of a months-long scheme originally formulated by Defendants Lu, Fisch, and Bünz.  Since at least as early as August 2020, Fisch attempted to "open source" (*i.e.*, make available to the public through a permissive open source license) Findora source code, including the Findora Ledger and a related "Zei cryptography library," despite the fact that he was told to refrain from doing so.

39.    In or about August of 2020, Fisch was engaged in discussions at Findora to open source the Company's Zei cryptography library.  Prior to those discussions, Fisch was one of the company's largest opponents of open sourcing the code base.  But in the final two months before his resignation, Fisch drastically changed his attitude and became a proponent of open sourcing for non-commercial use.  At the time of these discussions, Temujin had in place specific rules for its open sourcing procedure and evaluation of the related licensing. In fact, per the discussion then, only the Zei cryptography library was under consideration for making its source code publicly available, while the Findora ledger platform source code was not be planned for open sourcing without auditing.  The Company's Board of Directors explicitly cautioned Fisch not to open source any of the Company's code or intellectual property without Board approval. Temujin's Board never approved releasing the Company's code to open source.

40.    Despite the fact that Fisch was told to refrain from open sourcing Temujin source code, he has attempted to do just that.  He did so, not by obtaining Board approval (as required), but instead by bypassing the Board and going directly to Lu (who was not a board member) for approval.  In a corporate email thread later deleted by Charles Lu, Lu wrote: "glad we finally sort

1  it out".

2      41.    Specifically, Fisch has attempted to open source Temujin's proprietary source

3  code, including the Findora Ledger and Zei cryptography library software, by publishing it online

4  under the pretext of a regulatory disclosure. Supposedly pursuant to export compliance

5  regulations, on September 15, 2020, Fisch posted the code online pursuant to a highly permissive

6  Massachusetts Institute of Technology ("MIT") license. Upon information and belief, Fisch did

7  so in a manner that does not suggest any bona fide regulatory disclosure purpose, but rather,

8  suggests it was done to make the code accessible to Fisch, Lu and their co-conspirators known

9  and unknown, who have sought to misappropriate, misuse, and capitalize on the code, which

10  comprises Temujin's most valuable trade secrets, following these individuals' October 2020

11  defection from the Company.  Fisch successfully put the wrong license on both source code bases

12  and refused to provide publishing links asked for by the company many times.

13      42.    Each of the individual Defendants entered into appropriate confidentiality, non-

14  disclosure, and invention assignment agreements with or for the benefit of Temujin Delaware

15  and/or Temujin Cayman.

16      43.    Plaintiffs are informed and believe, and based thereon allege, that Defendant

17  Translucence, itself and in concert with the other Defendants, has unlawfully misappropriated and

18  misused Plaintiffs' trade secrets and other information and property downloaded or otherwise

19  removed from Plaintiffs' systems by the individual Defendants.

20  ### FALSE STATEMENTS ABOUT THE BUSINESS, OPERATIONS,
21  ### TECHNOLOGY, AND PERSONNEL OF THE PLAINTIFFS

22      44.    Plaintiffs are informed and believe, and based thereon allege, that Defendant

23  Translucence, by itself and in concert with the other Defendants, has made and encouraged others

24  to make false statements to third parties about the business, operations, technology, and personnel

25  of the Plaintiffs, intended to damage, harm, impair and obstruct Plaintiffs' business and

26  relationships.

27      45.    For example, Plaintiffs are informed and believe, and based thereon allege, that

28  Translucence and/or Defendants Lu, Fisch, and/or Bünz have falsely represented to third parties

that they have rights to use all of Plaintiffs' codes and that they recruited all of Plaintiffs' core engineering team to work for Translucence.

46.     Plaintiffs are further informed and believe, and based thereon allege, that Translucence and/or Defendants Lu, Fisch, and/or Bünz have made false statements, and/or induced or encouraged others make false statements, to third parties regarding the Plaintiffs and their business in connection with and during the Findora public-facing token sale in late December 2020 through early January 2021.

47.     Plaintiffs are further informed and believe, and based thereon allege, that Translucence and/or Defendants Lu, Fisch, and/or Bünz have made false statements and spread false rumors, and/or induced or encouraged others make false statements and spread false rumors, to Plaintiffs' employees, consultants, and advisors regarding the business, operations, technology, and personnel of Plaintiffs, intended to harm, disparage, and shake the confidence of the employees, consultants, and advisors and thereby harm Plaintiffs and their business.

## INTERFERENCE WITH PLAINTIFFS' CONTRACTS

48.     Plaintiffs are informed and believe, and based thereon allege, that Defendant Translucence and/or Defendants Lu, Fisch, and/or Bünz have intentionally and maliciously interfered with Plaintiffs' contracts, intending to cause harm and damage to Plaintiffs.

49.     For example, Plaintiffs are informed and believe, and based thereon allege, that Translucence and/or Defendants Lu, Fisch, and/or Bünz are aware of various contracts Plaintiffs' have or had with third parties by virtue of Defendants Lu, Fisch, and/or Bünz prior involvement as employees or consultants with the Plaintiffs.

50.     In particular, Plaintiffs are informed and believe, and based thereon allege, that Translucence and/or Defendants Lu, Fisch, and/or Bünz at all material times were and are aware of a services agreement between Findora Foundation Ltd. and Temujin Cayman, dated July 2, 2019, pursuant to which Plaintiffs provided services to Findora Foundation Ltd.  The deliberate and malicious actions of Defendant Translucence and/or Defendants Lu, Fisch, and/or Bünz, caused or substantially caused the Findora Foundation to terminate this services agreement with Temujin Cayman in May 2021, causing substantial loss and damage to Plaintiffs.

**INTERFERENCE WITH PLAINTIFFS' BUSINESS
AND INVESTOR RELATIONSHIPS**

51.     Plaintiffs are informed and believe, and based thereon allege, that Defendants Translucence, Lu, Fisch, and Bünz have also acted in concert to interfere with Plaintiffs' relationships with their advisors, partners, and investors.

52.     Plaintiffs are informed and believe, and based thereon allege, that Defendants Translucence, Lu, Fisch, and Bünz and/or others under their direction contacted advisors and business partners of Plaintiffs in an attempt to discourage them from advising Plaintiffs further and to disrupt Plaintiffs' business.

53.     Plaintiffs are further informed and believe, and based thereon allege, that Defendants Translucence, Lu, Fisch, and Bünz and/or others under their direction also have contacted certain of Temujin's investors in a deliberate and malicious attempt to disrupt the relationship between Plaintiffs and an important investor.

54.     Plaintiffs are further informed and believe, and based thereon allege, that in each of these actions and interactions, Defendants Translucence, Lu, Fisch, and Bünz and/or others under their direction have made false statements as to the Plaintiffs, their business, property, and personnel.

55.     Plaintiffs are further informed and believe, and based thereon allege, that Defendants Translucence, Lu, Fisch, and Bünz and/or others under their direction have communicated with and continue to communicate with current and former employees and consultants of Plaintiffs regarding the Plaintiffs, their business, property, and personnel, in an effort to sow distrust among Plaintiffs' employees and consultants, diminish morale, and obstruct and interfere with Plaintiffs' ability to conduct their business.

56.     Plaintiffs are further informed and believe, and based thereon allege, that Defendants Translucence, Lu, Fisch, and Bünz and/or others under their direction have deliberately and maliciously solicited several current employees to disrupt and/or defect from Plaintiffs' business, encouraging employees to abandon Plaintiffs and work with Translucence to obstruct and interfere with Plaintiffs' ability to conduct their business.

57.     As a consequence of the foregoing deliberate and malicious actions by Defendants Translucence, Lu, Fisch, and Bünz and/or others under their direction, Plaintiffs have been damaged, including economically and tangibly.  Among other costs incurred, Plaintiffs' business operations have been disrupted and delayed, they have been forced to incur significant attorneys' fees and others costs to combat Defendants' efforts, and they have suffered and/or will suffer lost business opportunities.

## FIRST CAUSE OF ACTION

### Trade Secret Misappropriation and Misuse, 18 U.S.C. § 1836 *et seq.*

### (All Defendants)

58.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

59.     Plaintiffs' trade secrets include, but are not limited to, source code, object code, executable code, design and development information, and implementation information related to a fully-managed, "zero knowledge based" ledger database, a peer-to-peer lending platform, financial regulatory platform, a security issuance and transactional platform, a selective disclosure identity system, a commercial banking ledger system, a zero knowledge data warehouse, a zero knowledge rollup ("ZKRollup") and various associated systems. Plaintiffs' products and services and the trade secret information related to them facilitate online transaction processing in a way that is auditable—through a public and decentralized process—but also confidential. Because the processes are auditable, and yet do not sacrifice user privacy, the Plaintiffs' products and services and the trade secret information related to them represent a significant advancement in the digital transaction processing space.

60.     Plaintiffs' technical, confidential and proprietary information related to their business, as alleged above, are Plaintiffs' "trade secrets" within the meaning of the Defend Trade Secrets Act enacted in 18 U.S.C. § 1836 et seq.  Such information derives actual and potential economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

61.     Plaintiffs have made reasonable efforts to maintain and protect the secrecy of such

trade secrets, including by ensuring that such information is password protected and restricted and that any employees or consultants with access to such information is bound by appropriate confidentiality and invention assignment agreements.

62.     Due to these security measures, Plaintiffs' trade secrets are not available to others in the financial technology industry, or any other industry, to use through any legitimate means.

63.     Plaintiffs' trade secrets relate to their products and services used in or intended to be used in interstate and foreign commerce.

64.     Plaintiffs are informed and believe, and based thereon allege, that Defendants, acting individually and in concert, have misappropriated Plaintiffs' trade secrets by using and/or disclosing them without Plaintiffs' authorization or consent and/or by permitting third parties to use the trade secrets without Plaintiffs' authorization or consent.

65.     Defendants' misappropriation of Plaintiffs' trade secrets has caused and will continue to cause Plaintiffs substantial injury, including but not limited to lost profits and the diminution in value of their trade secrets.  In addition, Defendants have been unjustly enriched by their misappropriation of Plaintiffs' trade secrets.

66.     Plaintiffs are entitled to recover their actual damages from Defendants' misappropriation and/or to recover for Defendants' unjust enrichment resulting from the misappropriation.

67.     Plaintiffs also are entitled to preliminary and permanent injunctive relief restraining Defendants' improper use and/or disclosure of Plaintiffs' trade secrets.

68.     Defendants' misappropriation of Plaintiffs' trade secrets is willful and malicious, and accordingly, Plaintiffs are entitled to an award of exemplary damages and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### Trade Secret Misappropriation and Misuse, Cal. Civ. Code §§ 3426 *et seq.*

#### (All Defendants)

69.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

70.     Plaintiffs' trade secrets include, but are not limited to, source code, object code, executable code design and development information, and implementation information related to a fully-managed, "zero knowledge based" ledger database, a peer-to-peer lending platform, financial regulatory platform, a security issuance and transactional platform, a selective disclosure identity system, a commercial banking ledger system, a zero knowledge data warehouse, a zero knowledge rollup ("ZKRollup") and various associated systems. Plaintiffs' products and services and the trade secret information related to them facilitate online transaction processing in a way that is auditable—through a public and decentralized process—but also confidential. Because the processes are auditable, and yet do not sacrifice user privacy, the Plaintiffs' products and services and the trade secret information related to them represent a significant advancement in the digital transaction processing space.

71.     Plaintiffs' technical, confidential and proprietary information related to their business, as alleged above, are Plaintiffs' "trade secrets" within the meaning of the Uniform Trade Secrets Act enacted in California Civil Code §§ 3426-3426.11.  Such information derives actual and potential economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

72.     Plaintiffs have made reasonable efforts to maintain and protect the secrecy of such trade secrets, including by ensuring that such information is password protected and restricted and that any employees or consultants with access to such information is bound by appropriate confidentiality and invention assignment agreements.

73.     Due to these security measures, Plaintiffs' trade secrets are not available to others in the financial technology industry, or any other industry, to use through any legitimate means.

74.     Plaintiffs' trade secrets relate to their products and services used in or intended to be used in interstate and foreign commerce.

75.     Plaintiffs are informed and believe, and based thereon allege, that Defendants, acting individually and in concert, have misappropriated Plaintiffs' trade secrets by using and/or disclosing them without Plaintiffs' authorization or consent and/or by permitting third parties to use the trade secrets without Plaintiffs' authorization or consent.

76.     Defendants' misappropriation of Plaintiffs' trade secrets has caused and will continue to cause Plaintiffs substantial injury, including but not limited to lost profits and the diminution in value of their trade secrets.  In addition, Defendants have been unjustly enriched by their misappropriation of Plaintiffs' trade secrets.

77.     Plaintiffs are entitled to recover their actual damages from Defendants' misappropriation and/or to recover for Defendants' unjust enrichment resulting from the misappropriation.

78.     Plaintiffs also are entitled to preliminary and permanent injunctive relief restraining Defendants' improper use and/or disclosure of Plaintiffs' trade secrets.

79.     Defendants' misappropriation of Plaintiffs' trade secrets is willful and malicious, and accordingly, Plaintiffs are entitled to an award of exemplary damages and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### Trade Libel

### (Defendants Translucence, Lu, Fisch, Bünz)

80.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

81.     Plaintiffs are further informed and believe, and based thereon allege, that Defendants Translucence, Lu, Fisch, and Bünz made, and aided, abetted, and encouraged others to make, statements that would be clearly or necessarily understood to have disparaged the quality of Plaintiffs' business, operations, technology, and personnel.

82.     Defendants Translucence, Lu, Fisch, and Bünz made, and aided, abetted, and encouraged others to make, such statements to a person other than Plaintiffs.

83.     Said statements were untrue.

84.     Defendants Translucence, Lu, Fisch, and Bünz knew that the statements were untrue or acted with reckless disregard of the truth or falsity of the statements.

85.     Defendants Translucence, Lu, Fisch, and Bünz knew or should have recognized that someone else might act in reliance on the statement, causing Plaintiffs financial loss.

86.     Plaintiffs suffered direct financial harm because someone else acted in reliance on the statements.

87.     Defendants Translucence's, Lu's, Fisch's, and Bünz's conduct was a substantial factor in causing Plaintiffs' harm.

## **FOURTH CAUSE OF ACTION**

### **Intentional Interference with Contractual Relations**

### **(Defendants Translucence, Lu, Fisch, and Bünz)**

88.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

89.     Prior to the above-described actions by Defendants Translucence, Lu, Fisch, and Bünz, Plaintiffs had entered into numerous valid contracts with third parties, among others, including advisors, investors, employees, and consultants.

90.     Defendants Translucence, Lu, Fisch, and Bünz knew of the existence of those contracts.

91.     Defendants Translucence, Lu, Fisch, and Bünz have carried out intentional, tortious acts, including false statements designed to induce a breach or disruption of Plaintiffs' contractual relationships.

92.     Those acts have disrupted or attempted to disrupt and/or caused actual breaches of Plaintiffs' contractual relationships.

93.     Absent Defendants Translucence's, Lu's, Fisch's, and Bünz's interference, Plaintiffs' contracts would have been performed.

94.     As a result of Defendants Translucence's, Lu's, Fisch's, and Bünz's interference, Plaintiffs have been damaged, including economically and tangibly.

95.     For example, on or around July 2, 2019, Temujin Cayman entered into a services agreement with the Findora Foundation Ltd. to provide services to the Findora Foundation Ltd.

96.     On information and belief, Defendants Translucence, Lu, Fisch, and Bünz knew of the services agreement.

97.     Defendants Translucence's, Lu's, Fisch's, and Bünz's conduct in spreading false

1  information and making false statements about Plaintiffs and Plaintiffs' business, operations,

2  technology, and/or personnel prevented performance or made performance more expensive or

3  difficult under the services agreement, resulting in Findora Foundation's termination of the

4  services agreement in May 2021.

5        98.    On information and belief, Defendants Translucence, Lu, Fisch, and Bünz

6  intended to disrupt performance of these contracts or knew that disruption of performance was

7  certain or substantially certain to occur.

8        99.    Plaintiffs were harmed by Defendants Translucence's, Lu's, Fisch's, and Bünz's

9  conduct.

10       100.    Defendants Translucence's, Lu's, Fisch's, and Bünz's conduct was a substantial

11  factor in causing Plaintiffs' harm.

12       101.    As such, Defendants are liable to Plaintiffs for tortious interference, and for the

13  damages caused to Plaintiffs, including such exemplary and other damages that are appropriate.

14                      **FIFTH CAUSE OF ACTION**

15       **Intentional Interference with Prospective Economic Advantage**

16          **(Defendants Translucence, Lu, Fisch, and Bünz)**

17       102.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs of

18  this Complaint as if fully set forth herein.

19       103.    Plaintiffs and third parties were in an economic relationship that probably would

20  have resulted in an economic benefit to Plaintiffs.

21       104.    Defendants Translucence, Lu, Fisch, and Bünz knew of the relationships.

22       105.    Defendants Translucence, Lu, Fisch, and Bünz engaged in intentional, tortious

23  acts, including false statements about Plaintiffs and Plaintiffs' business, operations, technology,

24  and/or personnel.

25       106.    By engaging in this conduct, Defendants Translucence, Lu, Fisch, and Bünz

26  intended to disrupt the relationships or knew that disruption of the relationships was certain or

27  substantially certain to occur.

28       107.    The relationships between Plaintiffs and the third parties were disrupted and

Plaintiffs were harmed as a result.

108.    Defendants Translucence's, Lu's, Fisch's, and Bünz's conduct was a substantial factor in causing Plaintiffs' harm.

109.    As such, Defendants are liable to Plaintiffs for tortious interference, and for the damages caused to Plaintiffs, including such exemplary and other damages that are appropriate.

### SIXTH CAUSE OF ACTION

### Unfair Competition, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

### (Defendants Translucence, Lu, Fisch, and Bünz)

110.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

111.    Defendants Translucence, Lu, Fisch, and Bünz engaged in unlawful and unfair business acts and practices.  Such practices include, but are not limited to, deliberate and malicious false statements about Plaintiffs and Plaintiffs' business, operations, technology, and/or personnel, misappropriation and misuse of Plaintiffs' trade secrets, and deliberate and malicious interference with Plaintiffs' contracts and business relationships.

112.    Defendants Translucence's, Lu's, Fisch's, and Bünz's business acts and practices were unlawful as described above.

113.    Defendants Translucence's, Lu's, Fisch's, and Bünz's business acts and practices were unfair in that the substantial harm suffered by Plaintiffs outweighs any justification that they may have had for engaging in those acts and practices.

114.    Plaintiffs have been harmed as a result of Defendants Translucence's, Lu's, Fisch's, and Bünz's unlawful and unfair business acts and practices. Plaintiffs are entitled to recover restitution, including without limitation all benefits that Defendants Translucence, Lu, Fisch, and Bünz received as a result of their unlawful and unfair business acts and practices; and to injunctive relief restraining Defendants Translucence, Lu, Fisch, and Bünz from engaging in further acts of unfair competition.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### SEVENTH CAUSE OF ACTION

#### Civil Conspiracy

#### (Defendants Translucence, Lu, Fisch, and Bünz)

115.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

116.    Through the above-described actions, Defendants Translucence, Lu, Fisch, and Bünz, acting in concert through knowing and mutual agreement, formed a conspiracy and conspired.

117.    The purpose of the conspiracy was, in sum, to disrupt and interfere with Plaintiffs' business operations for the sake of damaging Plaintiffs, permitting Defendants Translucence, Lu, Fisch, and Bünz to pursue a competing venture, and enriching Defendants Translucence, Lu, Fisch, and Bünz unjustly.

118.    Defendants Translucence's, Lu's, Fisch's, and Bünz's operation of the conspiracy, through acts such as (a) misappropriating and misusing Plaintiffs' information and property without authorization, (b) deliberately and maliciously making false statements about Plaintiffs and Plaintiffs' business, operations, technology, and/or personnel, and, (c) deliberately and maliciously interfering with Plaintiffs' contracts and business, investor, and other relationships, have damaged and continue to damage Plaintiffs.

119.    As such, each Defendant is liable to Plaintiffs on the basis of civil conspiracy, as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.

### EIGHTH CAUSE OF ACTION

#### Declaratory Relief

#### (All Defendants)

120.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

121.    Through the above-described actions, Defendants, acting in concert, seek to usurp control of Plaintiffs' information and property.

122.    That information and property are Plaintiffs' property exclusively.

123.    Plaintiffs are entitled to and seek declaratory relief confirming that the information and property misappropriated and misused by Defendants, are the exclusive property of Plaintiffs and that neither Defendants nor any third parties are entitled to use that information and property without Plaintiffs' permission.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in their favor against Defendants Translucence Research, Inc., Benjamin Fisch, Charles Lu, Benedikt Bünz, Nathan McCarty, Fernando Krell, Philippe Camacho Cortina, Binyi Chen, and Luoyuan (Alex) Xiong, and Does 1 through 20, inclusive, as follows:

1.    For declaratory relief, stating and confirming that Plaintiffs' information and property misappropriated and misused by Defendants are the exclusive property of Plaintiffs and that neither Defendants nor any third parties are entitled to use that information and property without Plaintiffs' authorization.

2.    For preliminary and permanent injunctive relief, and/or an order of specific performance, restraining and enjoining Defendants and any third parties associated with Defendants from accessing or using Plaintiffs' information and property for any commercial purpose.

3.    For compensatory, special, incidental and consequential damages according to proof.

4.    For exemplary and punitive damages to the extent permitted by law.

5.    For recovery of the unjust enrichment obtained by Defendants as a result of their wrongful conduct.

6.    For an award of prejudgment interest, cost of suit, and reasonable attorneys' fees to the extent permitted by contract or by operation of law.

7.    For such other and further relief as the Court may deem just and proper.

1

**<u>DEMAND FOR JURY TRIAL</u>**

2

Plaintiffs demand a trial by jury on all jury triable claims and issues in this action.

3

4

5

DATED:  November 24, 2021                           HANSEN LAW FIRM, P.C.

6

7

8

By: _____/s/ Craig A. Hansen_____
                    Craig A. Hansen

9

10

Attorneys for Plaintiffs
Temujin Labs Inc., a Delaware corporation, and
Temujin Labs Inc., a Cayman Islands corporation.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28