Craig A. Hansen (CA Bar No. 209622)
  Email: craig@hansenlawfirm.net
Stephen C. Holmes (CA Bar No. 200727)
  Email: steve@hansenlawfirm.net
Philip E. Yeager (CA Bar No. 265939)
  Email: phil@hansenlawfirm.net
Collin D. Greene (CA Bar No. 326548)
  Email: collin@hansenlawfirm.net
HANSEN LAW FIRM, P.C.
75 E. Santa Clara Street, Suite 1250
San Jose, CA 95113-1837
Telephone: (408) 715 7980
Facsimile: (408) 715 7001

Attorneys for Plaintiffs
Temujin Labs Inc., a Delaware corporation, and
Temujin Labs Inc., a Cayman Islands corporation.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEMUJIN LABS INC., a Delaware corporation, and TEMUJIN LABS INC., a Cayman Islands corporation,<br><br>Plaintiffs,<br><br>v.<br><br>TRANSLUCENCE RESEARCH, INC., a Delaware corporation, BENJAMIN FISCH, CHARLES LU, BENEDIKT BÜNZ, NATHAN MCCARTY, FERNANDO KRELL, PHILIPPE CAMACHO CORTINA, BINYI CHEN, AND LUOYUAN (ALEX) XIONG, and DOES 1-20, inclusive,<br><br>Defendants. | CASE NO.: 4:21-CV-09152-JST<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT, OR IN THE ALTERNATIVE, TO STAY CASE**<br><br>Date: May 26, 2022<br>Time: 2:00 PM<br>Courtroom: Courtroom 6, 2nd Floor<br>Judge: Hon. Jon S. Tigar<br><br>Complaint Filed: November 24, 2021 |

1

2

**<u>TABLE OF CONTENTS</u>**

3

I.      INTRODUCTION………………………………………………………………1
II.     STATEMENT OF ISSUES……………………………………………………2
III.    STATEMENT OF FACTS……………………………………………………2
IV.     LEGAL ARGUMENT…………………………………………………………3
        A.  The Legal Standards Governing Defendants' Motion to Dismiss……………3
        B.  The UTSA Does Not Displace Plaintiffs' Causes of Action………………………4
        C.  Plaintiffs State a Claim for Interference, Unfair Competition, Civil
            Conspiracy, and Declaratory Relief …………………………………………7
            1.  Intentional Interference with Prospective Economic Advantage……………7
                a.  Plaintiffs Properly Allege all Elements…………………………………7
                b.  Defendants' Conduct was Independently Wrongful……………………9
            2.  Intentional Interference with Contractual Relations…………………………10
            3.  Unfair Competition……………………………………………………10
            4.  Civil Conspiracy………………………………………………………...11
            5.  Declaratory Relief……………………………………………………12
        D.  Plaintiffs State a Claim for Misappropriation of Trade Secrets………………13
        E.  Plaintiffs State a Claim for Trade Libel……………………………………14
        F.  Plaintiffs Adequately Plead Allegations as to Nathan McCarty………………16
        G.  It Is Inappropriate to Dismiss This Case Under the *Colorado River*
            Doctrine…………………………………………………………………17
            1.  The State Court Action Will Not Resolve All Issues Between the Parties…...18
            2.  The *Colorado River* Factors Do Not Support Dismissal……………………19
                a.  First Factor…………………………………………………………19
                b.  Second Factor………………………………………………………19
                c.  Third Factor…………………………………………………………20
                d.  Fourth Factor………………………………………………………20
                e.  Fifth Factor…………………………………………………………20
                f.  Sixth Factor…………………………………………………………21
                g.  Seventh Factor………………………………………………………21
                h.  Eighth Factor………………………………………………………...21
        H.  It Is Inappropriate to Stay this Case…………………………………………21
V.      CONCLUSION……………………………………………………………22

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' MOTION TO            i
DISMISS

## TABLE OF AUTHORITIES

**Cases**

*Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F.Supp.3d 868 (N.D. Cal. 2018)………………………...13

*AlterG, Inc. v. Boost Treadmills LLC*, 388 F.Supp.3d 1133 (N.D. Cal. 2019)…………………...13

*Angelica Textile Servs., Inc. v. Park*, 220 Cal.App.4th 495 (2013)…………………………….4-6

*Anokiwave, Inc. v. Rebeiz* (S.D. Cal., Sept. 17, 2018, No. 18-CV-629 JLS (MDD)) 2018 WL 4407591………………………………………………………………………………………………4, 6

*Auvil v. CBS "60 Minutes"*, 67 F.3d 816 (9th Cir. 1995)…………………………………………...15

*Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007)……………………………………………………4

*Blank v. Kirwan*, 39 Cal.3d 311 (1985)…………………………………………………………...8

*Buxton v. Eagle Test Systems, Inc.* (N.D. Cal., Mar. 26, 2010, No. C-08-04404 RMW) 2010 WL 1240749…………………………………………………………………………………………………8

*Caltex Plastics, Inc. v. Lockheed Martin Corporation*, 824 F.3d 1156 (9th Cir. 2016)………...3, 4

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 (1999)……………………………………………………………………………………………10-11

*Chicago Title Ins. Co. v. Great Western Financial Corp.*, 69 Cal.2d 305 (1968)………………..12

*Colorado River Water Conservation Dist. v. United States*, 424 US 800 (1976)……………………………………………………………………………………17, 18, 21, 22

*Corazon v. Aurora Loan Services, LLC* (N.D. Cal., May 5, 2011, No. 11-00542 SC) 2011 WL 1740099…………………………………………………………………………………………...16

*Films of Distinction, Inc. v. Allegro Film Productions, Inc.* 12 F.Supp.2d 1068 (C.D. Cal. 1998)…………………………………………………………………………………………...15

*Gauvin v. Trombatore*, 682 F.Supp. 1067 (N.D. Cal. 1988)…………………………………...16

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988)………………………18

*Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F3d 930 (7th Cir. 2012)…………………………………………………………………………………………….4

*In re Sagent Technology, Inc., Derivative Litigation*, 278 F.Supp.2d 1079 (N.D. Cal. 2003)……………………………………………………………………………………16-17

1  *Intel Corp. v. Advanced Micro Devices, Inc.,* 12 F.3d 908 (9th Cir.1993)…………………....17-18

2  *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020)…………………..13

3  *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal.App.4th 939

4  (2009)…………………………………………………………………………………………….4

5  *Kelly Inv., Inc. v. Continental Common Corp.*, 315 F.3d 494 (5th Cir. 2002)……………19-20, 22

6  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003)……………………...9, 10

7  *Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005). …………………………………….22

8  *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 US 1 (1983)………………….....18

9  *Nakash v. Marciano,* 882 F.2d 1411 (9th Cir.1989)…………………………………………...17

10  *Quackenbush v. Allstate Ins. Co.*, 517 US 706 (1996)………………………………………17

11  *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26 (1998)……………………………12

12  *Reeves v. Hanlon*, 33 Cal.4th 1140 (2004)………………………………………………..9

13  *Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.*, 2 Cal.5th 505 (2017)……………….7

14  *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966 (9th Cir. 2011)……………….....18, 21

15  *Rubin v. Green*, 4 Cal.4th 1187 (1993)………………………………………………………...11

16  *Saucier v. Aviva Life & Annuity Co.*, 701 F3d 458 (5th Cir. 2012)…………………………....19

17  *Smith v. Central Ariz. Water Conservation Dist.*, 418 F.3d 1028 (9th Cir. 2005)……......……17-19

18  *Starr v. Baca*, 652 F3d 1202 (9th Cir. 2011)…………………………………………………..4

19  *Strom v. United States*, 641 F3d 1051 (9th Cir. 2011)……………………………………...…3

20  *United States v. Corinthian Colleges*, 655 F3d 984 (9th Cir. 2011)……………………………..4

21  *United States v. Morros*, 268 F3d 695 (9th Cir. 2001)………………………………………...20

22  *Winchester Mystery House, LLC v. Global Asylum, Inc.*, 210 Cal.App.4th 579 (2012)………...…7

23  **Statutes**

24  Cal. Bus. & Prof. Code § 17200………………………………………………………………10

25  Cal. Civ. Code §§ 3426……………………………………………………………………….2-4

26  Cal. Penal Code § 502(c)…………………………………………………………………….2, 3

27  18 U.S.C. § 1836……………………………………………………………………………3, 21

28

1

**Rules**

2

FRCP 8(e)…………………………………………………………………………………4

3

FRCP 12(b)(6)………………………………………………………………………...3

4

FRCP 15(a)………………………………………………………………………...4

5

**Other Authorities**

6

Judicial Council Of California Civil Jury Instruction 1731………………………………...14-15

7

Phillips & Stevenson, Rutter Group Practice Guide: Federal Civil Procedure Before Trial,

8

Calif. & 9th Cir. Editions (2021), § 2:4527………………………………………………17

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' MOTION TO        iv
DISMISS

1
2

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT, OR IN THE ALTERNATIVE, TO STAY CASE

3

## I.   INTRODUCTION

4    Defendants Translucence Research, Inc. ("Translucence"), Benjamin Fisch, Charles Lu,

5    and Nathan McCarty (collectively, "Defendants") bring this Motion to Dismiss premised upon (1)

6    the incorrect assertion that Plaintiffs Temujin Labs Inc., a Delaware corporation ("Temujin

7    Delaware") and Temujin Labs Inc., a Cayman Islands corporation ("Temujin Cayman")

8    (collectively, "Plaintiffs") fail to state claims as a matter of law in their Complaint; and (2) the

9    misguided notion that a state court action involving two of them seeks the exact same relief at

10   issue in this action, thus meriting a dismissal or stay of this action.  Plaintiffs are wrong.

11   First, Defendants assert that Plaintiffs' Fourth, Fifth, Sixth, Seventh, and Eighth Causes of

12   Action for intentional interference with contractual relations, intentional interference with

13   prospective economic advantage, unfair competition, civil conspiracy, and declaratory relief must

14   be dismissed because Defendants assert they are preempted by the state Uniform Trade Secrets

15   Act ("CUTSA").  But the Fourth through Eighth Causes of Action contain allegations

16   independent of the trade secrets misappropriation claims, and are adequately pled.

17   Second, Defendants claim that Plaintiffs' First and Second Causes of Action under the

18   Defend Trade Secrets Act ("DTSA") and CUTSA must be dismissed for an alleged failure to

19   identify the trade secrets with requisite particularity.  Again, Defendants are incorrect because

20   Plaintiffs do allege their trade secrets with adequate particularity.

21   Third, Defendants claim Plaintiffs do not adequately plead their trade libel claim.  But

22   Plaintiffs do adequately plead this claim.

23   Fourth, Defendants claim that there are no factual allegations tying McCarty to any

24   alleged wrongdoing.  The Complaint is replete with such facts.

25   Finally, Defendants assert that this action should be dismissed or stayed based upon the

26   *Colorado River* doctrine.  But as Plaintiffs explain below, there is no support for this assertion.

27   Therefore, Plaintiffs respectfully request that the Court deny Defendants' Motion to

28   Dismiss.  This action should be allowed to proceed.  Alternatively, if the Court grants any portion

1   of Defendants' Motion to Dismiss, Plaintiffs should be allowed to amend their Complaint to

2   resolve any potential pleading deficiencies.

3                       **II.      STATEMENT OF ISSUES**

4        1.      Whether Plaintiffs' intentional interference with contractual relations, intentional

5   interference with prospective economic advantage, unfair competition, civil conspiracy, and

6   declaratory relief claims state a basis independent of any misappropriation of a trade secret and

7   are sufficiently pled.

8        2.      Whether Plaintiffs adequately identify their trade secrets under the DTSA and

9   CUTSA.

10       3.      Whether Plaintiffs can state a claim for trade libel.

11       4.      Whether Plaintiffs have alleged facts tying McCarty to any alleged wrongdoing.

12       5.      Whether the *Colorado River* doctrine can and should be applied to dismiss or stay

13   this case.

14                      **III.     STATEMENT OF FACTS**

15       On November 6, 2020, Temujin Delaware filed a state court action in Santa Clara County

16   Superior Court against three defendants – Ariel Abittan, Benjamin Fisch, and Charles Lu –

17   alleging causes of action for declaratory relief, civil conspiracy, tortious interference, breach of

18   contract, trade secret misappropriation under Cal. Civ. Code §§ 3426 et seq., violation of Cal.

19   Penal Code 502(c), conversion, breach of fiduciary duty, and damages and injunctive relief (the

20   "State Court Action").

21       On November 19, 2021, Plaintiffs filed a state court action in San Francisco County

22   Superior Court (the "SF Action") against Translucence Research, Inc., Fisch, Lu, Benedikt Bünz,

23   Nathan McCarty, Fernando Krell, Philippe Camacho Cortina, Binyi Chen, and Luoyuan (Alex)

24   Xiong alleging causes of action for trade secret misappropriation under Cal. Civ. Code §§ 3426 et

25   seq., trade libel, intentional inference with contractual relations, intentional interference with

26   prospective economic advantage, unfair competition, civil conspiracy, and declaratory and

27   injunctive relief.

28       On November 24, 2021, Plaintiffs filed this action against Translucence, Fisch, Lu, Bünz,

McCarty, Krell, Cortina, Chen, and Xiong alleging causes of action for trade secret misappropriation and misuse under 18 U.S.C. § 1836 et seq., trade secret misappropriation under Cal. Civ. Code §§ 3426 et seq., trade libel, intentional inference with contractual relations, intentional interference with prospective economic advantage, unfair competition, civil conspiracy, and declaratory relief and injunctive relief.  Plaintiffs subsequently dismissed the SF Action on December 23, 2021, electing to proceed with their claims in federal court.

As stated above, the State Court Action asserts causes of action for breach of contract, violation of Cal. Penal Code § 502(c), conversion, and breach of fiduciary duty.  None of those causes of action are asserted in this case.  Further, as stated above, in this case, Plaintiffs assert causes of action for DTSA, trade libel, and unfair competition, none of which are asserted in the State Court Action.  Additionally, in this case, Plaintiffs named nine defendants, only two of whom happen to be defendants in the State Court Action – Fisch and Lu. Much of the focus of the complaint in the State Court Action is on Fisch and Lu's breaches of their agreements to Temujin Delaware while they were working for Temujin Delaware, which are not specifically at issue here.  Such breaches include, for example, Lu's refusal to provide credentials to access Temujin Delaware's various social media accounts, including Twitter, Youtube, Medium, Telegram, and Discord (*see* Complaint at ¶¶ 28-30).  In sum, while the State Court Action is premised upon the past harm Lu and Fisch caused to Plaintiffs while with Temujin Delaware, the Complaint here seeks relief based upon the continuing and future harm that the various defendants, including new Defendants Translucence, Bünz, McCarty, Krell, Cortina, Chen, and Xiong are causing to the Plaintiffs.

## IV.   LEGAL ARGUMENT

### A.  The Legal Standards Governing Defendants' Motion to Dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the complaint. *Strom v. United States*, 641 F3d 1051, 1067 (9th Cir. 2011). "A complaint may be dismissed for failure to state a claim only when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corporation*, 824 F.3d 1156, 1159 (9th Cir. 2016).  The Court "must accept all well-pleaded

1   material facts as true and draw all reasonable inferences in favor of the plaintiff." *Id.*  Further,

2   pleadings in federal courts "must be construed so as to do justice." FRCP 8(e).  A complaint is

3   sufficient if it gives the defendant "fair notice of what the … claim is and the grounds upon which

4   it rests." *Bell Atlantic Corp. v. Twombly*, 550 US 544, 555 (2007) (internal quotes omitted); see

5   *Starr v. Baca*, 652 F3d 1202, 1212 (9th Cir. 2011) (discussing traditional liberal theory of Rule

6   8(a)).

7           Additionally, leave to amend is usually freely granted by the court; FRCP 15(a) expressly

8   states the court "should freely give leave when justice so requires." FRCP 15(a)(2); *United States*

9   *v. Corinthian Colleges*, 655 F3d 984, 995 (9th Cir. 2011) (standard for granting leave to amend is

10  "generous"); *Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F3d 930, 943

11  (7th Cir. 2012).

12          **B.  The UTSA Does Not Displace Plaintiffs' Causes of Action**

13          Defendants incorrectly argue that the UTSA preempts Plaintiffs' Fourth through Eighth

14  Causes of Action.

15          California's UTSA displaces noncontractual civil claims that are "based on the same

16  nucleus of facts" as the UTSA claim; this determination is based on the facts alleged in the

17  complaint. *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171

18  Cal.App.4th 939, 956-962 (2009).  However, the UTSA does not affect "other civil remedies that

19  are not based upon misappropriation of a trade secret."  Cal. Civ. Code § 3426.7(b)(2).

20  *Anokiwave, Inc. v. Rebeiz* (S.D. Cal., Sept. 17, 2018, No. 18-CV-629 JLS (MDD)) 2018 WL

21  4407591, at *4 (emphasis added) provides the following helpful case summary that discusses

22  when claims are not displaced by the UTSA:

23          In [*Angelica Textile Servs., Inc. v. Park*, 220 Cal.App.4th 495, 507 (2013)],
        a company that provided linen services brought suit against its former employee,
24      who had included in defendant's customers'' contracts that they could cancel their
        contracts with the defendant. *Id.* at 499. The plaintiff then permitted those
25      customers to take their business to the defendant's new employer. *Id.* The
        plaintiff's complaint alleged claims for misappropriation of trade secrets, violation
26      of California Business and Professions Code section 17200, unfair competition,
        interference with business relationships, and breach of contract. *Id.* at 502. The
27      trial court granted the plaintiff summary adjudication on its non-CUSTA causes of
        action, and the court of appeals reversed.

28

OPPOSITION TO DEFENDANTS' MOTION TO         4
DISMISS

1

In analyzing the claim, the court of appeals recognized the principle
that "[C]UTSA does not displace noncontract claims that, *although related to a*
*trade secret misappropriation, are independent and based on facts distinct from*
*the facts that support the misappropriation claim." Id.* at 506. The court found that
the plaintiff's "claims for breach of contract, breach of fiduciary duty, unfair
competition, interference with business relations and conversion each have a basis
independent of any misappropriation of a trade secret." *Id.* at 507. Specifically as
to the breach of fiduciary duty claim, the court found this claim was "based on [the
defendant]'s wrongful conduct in violating the noncompetition agreement and
violating his duty of loyalty to [plaintiff]" and thus "was independent of any trade
secret claim." *Id.* at 508. Thus, it was not preempted. *Id.*

Here, Plaintiffs allege in their Fourth Cause of Action for Intentional Interference with
Contractual Relations that "Defendants Translucence, Lu, Fisch, and Bünz have carried out
intentional tortious acts, including false statements designed to induce a breach or disruption of
Plaintiffs' contractual relationships." Complaint, ¶ 91.  Further, "[t]hose acts have disrupted or
attempted to disrupt and/or caused actual breaches of Plaintiffs' contractual relationships." ¶ 92.
Also, their "conduct in spreading false information and making false statements about Plaintiffs
and Plaintiffs' business, operations, technology, and/or personnel prevented performance or made
performance more expensive or difficult under the services agreement, resulting in Findora
Foundation's termination of the services agreement in May 2021." Complaint, ¶ 97.  In the Fifth
Cause of Action for Intentional Interference with Prospective Economic Advantage, Plaintiffs
allege, "Defendants Translucence, Lu, Fisch, and Bünz engaged in intentional, tortious acts,
including false statements about Plaintiffs and Plaintiffs' business, operations, technology, and/or
personnel." Complaint, ¶ 105. Plaintiffs allege in their Sixth Cause of Action that Defendants
engaged in unlawful and unfair business acts and practices, including "deliberate and malicious
false statements about Plaintiffs and Plaintiffs' business, operations, technology, and/or
personnel, misappropriation and misuse of Plaintiffs' trade secrets, and deliberate and malicious
interference with Plaintiffs' contracts and business relationships." Complaint, ¶ 111.  In their
Seventh Cause of Action for Civil Conspiracy, Plaintiffs allege that the Defendants operated their
conspiracy through acts such as, "deliberately and maliciously making false statements about
Plaintiffs and Plaintiffs' business, operations, technology, and/or personnel, and … deliberately
and maliciously interfering with Plaintiffs' contracts and business, investor, and other

relationships…" Complaint, ¶ 118.  Finally, Plaintiffs seek declaratory relief in their Eighth

Cause of Action and incorporate their previous allegations in the Complaint. Complaint, ¶¶ 120-

123.  Accordingly, there are allegations supporting these four Causes of Action that "are not

based upon misappropriation of a trade secret," because each has a "basis independent of any

misappropriation of a trade secret."  As such, there is no displacement of Plaintiffs' Fourth

through Eighth Causes of Action.

Defendants cite *Anokiwave* in support of their assertion that there is displacement here,

but that reliance is misplaced.  *Anokiwave* distinguished *Angelica* from the facts before it because

in *Angelica*, the defendant breached his duty of loyalty to the plaintiff by modifying contracts and

negotiating with customers.  *Anokiwave* at *4.

> In *Angelica*, whether or not the defendant disclosed trade secrets was an
> independent issue. That is not the case here, where the allegation is that Dr. Rebeiz
> breached his duty of loyalty *by* disclosing trade secrets. The claim for breach of
> fiduciary duty is based on the same operative facts and is therefore preempted by
> CUTSA.

*Id.*  Here, Plaintiffs similarly allege facts independent of their misappropriation claims.  For

example, they allege that Defendants made "false statements designed to induce a breach or

disruption of Plaintiffs' contractual relationships."  Complaint, ¶ 91.  This allegation is not based

upon the same operative facts as their misappropriation claims, and therefore is not displaced by

the UTSA.

Defendants also focus on the allegation of "misappropriation and misuse of Plaintiffs'

trade secrets" in the Sixth Cause of Action, but fail to mention the many other allegations in that

Cause of Action that are independent of such misappropriation claims (for example, "deliberate

and malicious false statements about Plaintiffs and Plaintiffs' business, operations, technology,

and/or personnel," and "deliberate and malicious interference with Plaintiffs' contracts and

business relationships." Complaint, ¶ 111).  To the extent that the UTSA could displace the

allegations in the Sixth Cause of Action, it would only do so as to the misappropriation claims, a

minor part of that Cause of Action.  The same is true with respect to Plaintiffs' Seventh Cause of

Action, in which Plaintiffs allege the deliberate and malicious "making [of] false statements about

Plaintiffs and Plaintiffs' business, operations, technology, and/or personnel." Complaint, ¶ 118.

The Seventh Cause of Action also incorporates the previous allegations of the Complaint, which include allegations independent of the misappropriation claims. (*see, e.g.*, Complaint, ¶¶ 46-47). As such, the UTSA displaces none of the Causes of Action.

### C. Plaintiffs State a Claim for Interference, Unfair Competition, Civil Conspiracy, and Declaratory Relief

Defendants claim that Plaintiffs fail to state a claim with respect to the Fourth through Eighth Causes of Action.  But Defendants are wrong.

### 1. Intentional Interference with Prospective Economic Advantage

#### a. Plaintiffs Properly Allege all Elements

Without merit, Defendants assert that Plaintiffs' claim for intentional interference with prospective economic relations "fails because Plaintiffs' failed to allege all of the requisite elements." Motion, 8:28 – 9:1.

To state a claim for intentional interference with prospective economic relations, Plaintiffs must allege: (1) an existing economic relationship between Plaintiffs and a third party, with the probability of future economic benefit to Plaintiffs; (2) Defendants' knowledge of the relationship; (3) intentional acts on the part of Defendants designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to Plaintiffs proximately caused by Defendants' acts. *Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.*, 2 Cal.5th 505, 512 (2017); *Winchester Mystery House, LLC v. Global Asylum, Inc.*, 210 Cal.App.4th 579, 596 (2012).  Here, Plaintiffs allege (1) that "Plaintiffs and third parties were in an economic relationship that probably would have resulted in an economic benefit to Plaintiffs." Complaint, ¶ 103; (2) "Defendants Translucence, Lu, Fisch, and Bünz knew of the relationships." ¶ 104; (3) "Defendants Translucence, Lu, Fisch, and Bünz engaged in intentional, tortious acts, including false statements about Plaintiffs and Plaintiffs' business, operations, technology, and/or personnel," and "By engaging in this conduct, Defendants Translucence, Lu, Fisch, and Bünz intended to disrupt the relationships or knew that disruption of the relationships was certain or substantially certain to occur." Complaint, ¶¶ 105-106; (4) "The relationships between Plaintiffs and the third parties were disrupted and Plaintiffs were harmed as a result." Complaint, ¶ 107; and

1   (5) "Defendants Translucence's, Lu's, Fisch's, and Bünz's conduct was a substantial factor in

2   causing Plaintiffs' harm." Complaint, ¶ 108.  Thus, Plaintiffs state all elements for their

3   intentional interference claim.

4          Nevertheless, Defendants assert that Plaintiffs' claim must fail because "Plaintiffs only

5   vaguely refer to economic relationships with 'third parties' without providing the specifics of any

6   relationship." Defendants' Motion, 9:7-8.  But Plaintiffs do plead existing economic relationships

7   between Plaintiffs and third parties.  Specifically, Plaintiffs allege that Defendants "contacted

8   *advisors and business partners of Plaintiffs* in an attempt to discourage them from advising

9   Plaintiffs further and to disrupt Plaintiffs' business." Complaint, ¶ 52 (emphasis added).

10  Plaintiffs also allege that Defendants "have contacted certain of *Temujin's investors* in a

11  deliberate and malicious attempt to disrupt the relationship between Plaintiffs and an important

12  investor." Complaint, ¶ 53 (emphasis added).  These allegations are more than sufficient under

13  the liberal federal "notice pleading standard."

14         Defendants misstate *Buxton v. Eagle Test Systems, Inc.* (N.D. Cal., Mar. 26, 2010, No. C-

15  08-04404 RMW) 2010 WL 1240749 for the proposition that additional specificity is required for

16  Plaintiffs' interference claim.  In that case, the court rejected the plaintiff's intentional

17  interference with prospective economic relations claim where the plaintiff only alleged that the

18  defendants' acts, "deprived Plaintiff of securing new employment in Singapore and limited his

19  pursuit of other positions in the semiconductor industry." *Id.* at * 2. Without any identifiable

20  prospective employers, the plaintiff's expectation of future employment was "at most a hope for

21  an economic relationship and a desire for future benefit." *Id.* (quoting *Blank v. Kirwan*, 39 Cal.3d

22  311, 331 (1985)). The facts in that case are readily distinguishable from those here, where

23  Plaintiffs identify the third parties as Plaintiffs' advisors, business partners, and investors – the

24  specific identities of whom may be borne out in discovery.  Plaintiffs here adequately plead their

25  claim for intentional interference with prospective economic relations.  However, if the Court

26  determines that Plaintiffs need to be more specific, it should grant Plaintiffs leave to amend to do

27  so.

28

OPPOSITION TO DEFENDANTS' MOTION TO          8
DISMISS

**b.  Defendants' Conduct was Independently Wrongful**

Defendants further assert this this intentional interference claim "fails because Plaintiffs do not plead any independent wrongful act." Motion, 9:12-13.  Not so.

The acts by which Defendants interfered must be "independently wrongful" – i.e., wrongful by some measure beyond the fact of the interference itself."  *Reeves v. Hanlon*, 33 Cal.4th 1140, 1152 (2004).  "Wrongful" means the conduct is forbidden by constitutional, statutory, common law, regulatory or other determinable legal standards. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1158-1159 (2003).  In *Korea Supply Co.*, the court determined the plaintiff satisfied the independent wrongfulness requirement:

> In its complaint, KSC alleged that defendant Kim, as an agent for Loral, engaged in bribery and offered sexual favors to key Korean officials in order to obtain the contract from the Republic of Korea. Under the Foreign Corrupt Practices Act, it is unlawful to pay or offer money or anything of value to a foreign official for the purposes of influencing any act or decision of the foreign official, or to induce the foreign official to use his or her influence with a foreign government to affect or influence any act or decision of the government. (15 U.S.C. § 78dd–1(a)(1)(A), (B).) In addition, the complaint alleges that the commissions paid by Loral to Kim exceeded the maximum allowable amounts established by the Foreign Corrupt Practices Act. (15 U.S.C. § 78dd–2(a)(1)(A), (B).) The complaint thus clearly alleges that defendants engaged in unlawful behavior in order to secure the SAR contract. KSC has, therefore, sufficiently alleged that defendants' acts, in addition to interfering with KSC's business expectancy, were wrongful in and of themselves.

*Id.* at 1159.  Here, Plaintiffs allege various specific wrongdoing by Defendants.  For example, Plaintiffs allege that,

> …before Lu left his job, he demanded that Temujin pay him $5 million in order to prevent him from leaving the company and spreading false information about its founders.  On information and belief, following his departure from Temujin, defendant Lu made good on his threat, and proceeded to spread false and malicious rumors about the Temujin founders, including that they were engaged in sex-trafficking, selling drugs, were Chinese spies, or members of the Chinese mafia.  On further information and belief, defendant Lu further spread malicious lies about Findora, including that Findora was a "scam," was being investigated by the FBI and SEC, and would never launch its main applications because it lost its head engineer who joined Translucence.

Complaint, ¶ 31.

Plaintiffs further allege,

> …Fisch once threw a bottled water at an early founding team member in the

1

2

3

4

5

office, frightening them from ever returning to the office again.  This was one of several acts taken by the individual defendants to encourage early employees to leave the company.  After the death of John Powers, defendant Fisch fabricated the story of a disagreement between Powers and another co-founder in order to create the false appearance of internal strife between the Temujin founders.  On information and belief, the individual defendants engaged in these acts for the purposes of harming Temujin and weakening it as a future competitor of Translucence.

6   Complaint, ¶ 34.  These actions thus clearly allege conduct forbidden by "constitutional,

7   statutory, common law, regulatory or other determinable legal standard[s]." *Korea Supply Co.*, 29

8   Cal.4th at 1159.  Such conduct is independently wrongful.  As such, Plaintiffs definitively state a

9   claim for intentional interference with prospective economic relations.

10        **2.   Intentional Interference with Contractual Relations**

11        Defendants also assert that Plaintiffs' intentional interference with contractual relations

12   claim fails due to it being "insufficiently pled because Plaintiffs do not allege a contract between

13   Plaintiffs and a third party."  Defendants' Motion, 9:20-21.  Defendants argue, with zero support,

14   that the contract that Plaintiffs do identify – with Findora Foundation Ltd. – is not with a third

15   party because Plaintiffs and "Findora Foundation Ltd." are "essentially the same, meaning any

16   alleged contract with Findora was not between Plaintiffs and a third party."  *Id.* at 9:24-28.

17   Defendants are mistaken.

18        Plaintiffs never assert in their Complaint that they are "Findora Foundation Ltd." or that

19   "Findora" is the same thing as "Findora Foundation Ltd."  Indeed, Plaintiffs allege that Findora

20   Foundation Ltd. terminated its July 2, 2019 services agreement between it and Temujin Cayman

21   in May 2021. ¶ 50.  Plaintiffs further allege that Defendants' "deliberate and malicious actions,"

22   as described in the Complaint, were the cause for this termination. *Id.*  Thus, Plaintiffs sufficiently

23   plead their cause of action for intentional interference with contractual relations.

24        **3.   Unfair Competition**

25        Plaintiffs sufficiently state a claim for unfair competition, despite Defendants' assertions

26   to the contrary.

27        California unfair competition law broadly defines unfair competition to include "any

28   unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  "Its

coverage is 'sweeping, embracing ''anything that can properly be called a business practice and that at the same time is forbidden by law.''" *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999) (quoting *Rubin v. Green*, 4 Cal.4th 1187, 1200 (1993)).  The statute makes clear that "a practice may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech Communications, Inc.*, 20 Cal.4th at 180.  A practice may be prohibited as "unfair" or "deceptive" even if it is not unlawful. *Id.*  Further, "[a]cts that the Legislature has determined to be lawful may not form the basis for an action under the unfair competition law, but acts may, if otherwise unfair, be challenged under the unfair competition law even if the Legislature failed to proscribe them in some other provision." *Id.* at 183. The California Supreme Court ultimately devised the following test for determining unfairness: "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 187.

Here, Plaintiffs assert that Defendants "engaged in unlawful and unfair business acts and practices" which included "deliberate and malicious false statements about Plaintiffs and Plaintiffs' business, operations, technology, and/or personnel, misappropriation and misuse of Plaintiffs' trade secrets, and deliberate and malicious interference with Plaintiffs' contracts and business relationships." Complaint, ¶ 111.  Defendants assert that Plaintiffs "fail to allege which statute or regulation was violated, let alone how the conduct was in violation of the statutes or how any conduct was in violation of those statutes." Motion, 10:19-21.  But Plaintiffs are not required to identify "which statute or regulation was violated"; Plaintiffs need only allege facts demonstrating that Defendants' conduct "significantly threatens or harms competition."  The Complaint is replete with such allegations.  Therefore, Plaintiffs sufficiently state a claim for unfair competition.

### 4. Civil Conspiracy

Plaintiffs sufficiently state a claim for civil conspiracy.  Defendants' assertions to the

1   contrary lack merit.

2          To state a cause of action for a conspiracy in restraint of trade, the plaintiff must allege (1)

3   the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto,

4   and (3) the damage resulting from such act or acts. *Quelimane Co. v. Stewart Title Guaranty Co.*,

5   19 Cal.4th 26, 47-48 (1998). "General allegations of agreement have been held sufficient

6   [citation], and the conspiracy averment has even been held unnecessary, providing the unlawful

7   acts or civil wrongs are otherwise sufficiently alleged." *Id.* (quoting *Chicago Title Ins. Co. v.*

8   *Great Western Financial Corp.*, 69 Cal.2d 305, 316 (1968)).  In *Quelimane Co.*, the California

9   Supreme Court recognized that "conspirators rarely make such agreements in the open or

10  document their illicit agreements," and determined that the complaint at issue in that case, "fairly

11  read," alleged a conspiracy to deny title insurance, which the defendant necessarily had

12  knowledge of along with the relevant facts. *Id.* at 48.

13         Here, Plaintiffs allege that the Defendants' conspiracy involved, inter alia, "deliberately

14  and maliciously making false statements about Plaintiffs and Plaintiffs' business, operations,

15  technology, and/or personnel, and, …deliberately and maliciously interfering with Plaintiffs'

16  contracts and business, investor, and other relationships…" Complaint, ¶ 118.  Plaintiffs allege

17  that the purpose of that conspiracy was "to disrupt and interfere with Plaintiffs' business

18  operations for the sake of damaging Plaintiffs, permitting Defendants Translucence, Lu, Fisch,

19  and Bünz to pursue a competing venture, and enriching Defendants Translucence, Lu, Fisch, and

20  Bünz unjustly." Complaint, ¶ 117.  The Complaint is replete with examples of how that

21  conspiracy manifested itself.  *See, e.g.*, Complaint, ¶¶ 30-31 (describing Lu's shutdown of

22  Plaintiffs' Amazon Web Service and the spreading of false information).  Defendants' assertion

23  that Plaintiffs allegations are "legally insufficient" is without merit.  Plaintiffs sufficiently state a

24  claim for civil conspiracy.

25         **5.  Declaratory Relief**

26         Finally, Defendants assert that Plaintiffs' claim for declaratory relief fails because it is

27  wholly derivative of Plaintiffs' misappropriation claims.  But as stated above, Plaintiffs

28  incorporate their previous allegations in the Complaint in their declaratory Cause of Action.

1   Complaint, ¶¶ 120-123.  Plaintiffs may seek declaratory relief outside of the context of their

2   misappropriation claims.  Further, Plaintiffs adequately plead their misappropriation claims.

3   Therefore, Plaintiffs adequately plead declaratory relief.

4       **D.  Plaintiffs State a Claim for Misappropriation of Trade Secrets**

5       Plaintiffs adequately plead their claims of misappropriation of trade secrets in their first

6   two Causes of Action.

7       To state a claim for trade secret misappropriation under the DTSA, a plaintiff must allege

8   that: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret;

9   and (3) the defendant's actions damaged the plaintiff." *AlterG, Inc. v. Boost Treadmills LLC*, 388

10  F.Supp.3d 1133, 1144 (N.D. Cal. 2019).  Courts have analyzed claims under the DTSA and

11  California's UTSA together because the elements are substantially similar. *InteliClear, LLC v.*

12  *ETC Global Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020).  "A plaintiff need not spell out the

13  details of the trade secret," but must "describe the subject matter of the trade secret with sufficient

14  particularity to separate it from matters of general knowledge in the trade or of special persons

15  who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within

16  which the secret lies." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F.Supp.3d 868, 881 (N.D. Cal.

17  2018).  The court in *Alta Devices* "found that the plaintiff, a manufacturer of thin-film solar

18  technology, adequately pleaded its trade secret claim based on a combination of factors":

19      First, the plaintiff identified "the exact technology in question: thin-film
        GaAs solar technology." *Id.* Second, the plaintiff listed with specificity the types
20      of trade secrets relating to the "thin-film GaAs solar technology": "[m]ethods of[ ]
        high throughput thin-film deposition; epitaxial lift-off of the thin-film; and GaAs
21      substrate maintenance and re-use," as well as "confidential cost analysis; proofs
        and tests of manufacturing concepts and techniques; tool roadmaps; manufacturing
22      process flows; and identification of equipment and equipment vendors; and
        information related to the foregoing." *Id.* In addition to the fact that the technology
23      was described with specificity, a non-disclosure agreement between the parties
        described with further particularity the confidential information that was imparted
24      to defendants, for example, "CVD technology and its commercial viability,"
        including the "CVD (Alta 2T) chamber scheme," "growth rate," "thin film
25      quality," "uniformity," "gas utilization efficiency," and "scalability and short cycle
        time feasibility." *Id.* Because the plaintiff's trade secret claims were based on the
26      confidential information exchanged pursuant to the non-disclosure agreement, the
        court concluded that the defendant had fair notice of the scope of the trade secrets
27      asserted. *Id.*

28  *AlterG, Inc. v. Boost Treadmills LLC*, 388 F.Supp.3d 1133, 1144 (N.D. Cal. 2019).

1    Defendants assert that Plaintiffs have not adequately identified their trade secret.  To the

2    contrary, Plaintiffs provide plenty of information for Defendants to have fair notice of the scope

3    of the trade secrets asserted.  In particular, Plaintiffs allege that their trade secrets include,

4    
5    
6    
7    
8    
9    
10   

> …source code, object code, executable code, design and development information, and implementation information related to a fully-managed, "zero knowledge based" ledger database, a peer-to-peer lending platform, financial regulatory platform, a security issuance and transactional platform, a selective disclosure identity system, a commercial banking ledger system, a zero knowledge data warehouse, a zero knowledge rollup ("ZKRollup") and various associated systems. Plaintiffs' products and services and the trade secret information related to them facilitate online transaction processing in a way that is auditable—through a public and decentralized process—but also confidential. Because the processes are auditable, and yet do not sacrifice user privacy, the Plaintiffs' products and services and the trade secret information related to them represent a significant advancement in the digital transaction processing space.

11   Complaint, ¶ 59.  Further, Plaintiffs allege that, "[e]ach of the individual Defendants entered into

12   appropriate confidentiality, non-disclosure, and invention assignment agreements with or for the

13   benefit of Temujin Delaware and/or Temujin Cayman." Complaint, ¶ 42.  Indeed, almost every

14   individual Defendant was a former employee or consultant of Temujin Delaware and contributed

15   to creating/were exposed to the trade secrets at issue in the Complaint. Complaint, ¶¶ 8-15.

16   Indeed, they were assisting Temujin Delaware with the development of its business and

17   technology.  The combination of factors here are similar to those at issue in *Alta Devices*.

18   Therefore, this Court should determine that Plaintiffs adequately plead their trade secrets in their

19   Complaint.

20   **E.  Plaintiffs State a Claim for Trade Libel**

21   Defendants assert that Plaintiffs do not adequately plead their claim for trade libel.

22   Plaintiffs do state such a claim.

23   To establish a claim for trade libel, a plaintiff must prove all of the following: (1) that the

24   defendant made a statement that would be clearly or necessarily understood to have disparaged

25   the quality of the plaintiff's product/service; (2) that the statement was made to a person other

26   than the plaintiff; (3) that the statement was untrue; (4) that the defendant knew the statement was

27   untrue/acted with reckless disregard for the truth or falsity of the statement; (5) that the defendant

28   knew or should have recognized that someone else might act in reliance on the statement, causing

the plaintiff financial loss; (6) that the plaintiff suffered direct financial harm because someone else acted in reliance on the statement; and (7) that the defendant's conduct was a substantial factor in causing the plaintiff's harm. Judicial Council Of California Civil Jury Instruction 1731.

Here, Plaintiffs allege (1) "that Defendants Translucence, Lu, Fisch, and Bünz made, and aided, abetted, and encouraged others to make, statements that would be clearly or necessarily understood to have disparaged the quality of Plaintiffs' business, operations, technology, and personnel." Complaint, ¶ 81; (2) "Defendants Translucence, Lu, Fisch, and Bünz made, and aided, abetted, and encouraged others to make, such statements to a person other than Plaintiffs." Complaint, ¶ 82; (3) "Said statements were untrue." Complaint, ¶ 83; (4) "Defendants Translucence, Lu, Fisch, and Bünz knew that the statements were untrue or acted with reckless disregard of the truth or falsity of the statements." Complaint, ¶ 84; (5) "Defendants Translucence, Lu, Fisch, and Bünz knew or should have recognized that someone else might act in reliance on the statement, causing Plaintiffs financial loss." Complaint, ¶ 85; (6) "Plaintiffs suffered direct financial harm because someone else acted in reliance on the statements." Complaint, ¶ 86; and (7) "Defendants Translucence's, Lu's, Fisch's, and Bünz's conduct was a substantial factor in causing Plaintiffs' harm." Complaint, ¶ 87.  Plaintiffs thus adequately plead all elements for their trade libel claim.  If the Court deems necessary, Plaintiffs should be granted leave to amend this Cause of Action to add any additional required particularity.

Plaintiffs acknowledge that, "In the Ninth Circuit, a product defamation or trade libel claim must be based on specific statements, and '[t]he defamatory character of the language must be apparent from the words themselves.'" *Films of Distinction, Inc. v. Allegro Film Productions, Inc.* 12 F.Supp.2d 1068, 1081, fn. 8 (C.D. Cal. 1998) (quoting *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 822 (9th Cir. 1995)).  Plaintiffs assert they have specifically identified such specific statements.  For example, Plaintiffs allege that Lu spread false and malicious rumors about the Temujin founders, "including that they were engaged in sex-trafficking, selling drugs, were Chinese spies, or members of the Chinese mafia."  Complaint, ¶ 31.  Further, Plaintiffs allege that, "[a]fter the death of John Powers, defendant Fisch fabricated the story of a disagreement between Powers and another co-founder in order to create the false appearance of internal strife

1    between the Temujin founders." Complaint, ¶ 34.  The Complaint is replete with such examples.

2    Nevertheless, if the Court is inclined to disagree, Plaintiffs should be granted leave to amend this

3    Cause of Action.

4         **F.  Plaintiffs Adequately Plead Allegations as to Nathan McCarty**

5         Defendants incorrectly assert that Plaintiffs do not plead allegations specific as to

6    Defendant McCarty.  In fact, Plaintiffs allege that McCarty first joined Temujin Delaware as a

7    System Engineer on June 22, 2020 pursuant to an employment offer letter signed on June 1, 2020,

8    he resigned from Temujin Delaware on November 5, 2020, and is working with Translucence.

9    Complaint, ¶ 11.  Plaintiffs further allege that McCarty, during his final period in the company's

10   tenure and while still receiving Temujin's salary, used his position at Temujin, and his access to

11   Temujin's systems and operations, to assist Translucence in developing its own operations and in

12   seeking financing. Complaint, ¶ 36.  Additionally, Plaintiffs allege that McCarty "downloaded,

13   copied and removed information, electronic files and other property belonging to the Plaintiffs to

14   use the same in starting, developing, and/or operating Translucence, in order to obstruct, disrupt

15   and interfere with Plaintiffs' business." Complaint, ¶ 37.  Plaintiffs allege that McCarty's actions

16   were part of the "months-long scheme originally formulated by Defendants Lu, Fisch, and Bünz."

17   Complaint, ¶ 38.  As such, Plaintiffs allege various wrongdoing by McCarty.

18        Defendants' authority to the contrary is inapposite.  In *Corazon v. Aurora Loan Services,*

19   *LLC* (N.D. Cal., May 5, 2011, No. 11-00542 SC) 2011 WL 1740099, at *3, the plaintiff named

20   Aurora and fifty Doe defendants in the complaint, and only mentioned Aurora once by name in

21   the entire Complaint.  On that basis, the Court determined that Aurora did not have fair notice of

22   the basis for the allegations against it. *Id.*  That can hardly be said here, where McCarty was a

23   former employee of Temujin Delaware and there are specific allegations regarding his role in the

24   wrongdoing.  In *Gauvin v. Trombatore*, 682 F.Supp. 1067 (N.D. Cal. 1988), the owner of a

25   disadvantaged trucking businesses lumped all defendant contractors and subcontractors together

26   in single, broad allegation and did not allege a basis of claim against each contractor and

27   subcontractor.  Again, that is not the case here. Further, *In re Sagent Technology, Inc., Derivative*

28   *Litigation*, 278 F.Supp.2d 1079 (N.D. Cal. 2003) involved breach of fiduciary duty against

OPPOSITION TO DEFENDANTS' MOTION TO        16
DISMISS

1   officers and directors of a corporation.  Defendants are simply incorrect that there are "zero

2   allegations specific to McCarty or McCarty's conduct."  Motion, 15:13.  Plaintiffs plead

3   allegations specific to Defendant McCarty.

4          **G.  It Is Inappropriate to Dismiss This Case Under the *Colorado River* Doctrine**

5          Defendants fail to put forth any valid reason to dismiss this case under the *Colorado River*

6   doctrine.  Pursuant to that doctrine, "[i]n the interest of 'wise judicial administration,' courts may

7   stay a case involving a question of federal law where a concurrent state action is pending in which

8   identical issues are raised." Phillips & Stevenson, Rutter Group Practice Guide: Federal Civil

9   Procedure Before Trial, Calif. & 9th Cir. Editions (2021), § 2:4527 (citing *Colorado River Water*

10  *Conservation Dist. v. United States*, 424 US 800, 815 (1976)).  When the relief sought in a

11  complaint is equitable or otherwise discretionary, federal courts invoking abstention principles

12  have discretion to either stay the action or decline jurisdiction altogether by dismissing the action

13  or, in removal cases, remanding it to state court. *Quackenbush v. Allstate Ins. Co.*, 517 US 706,

14  717-722 (1996). By contrast, in suits seeking only money damages (legal relief), a federal court

15  may invoke abstention principles only to stay the action (i.e., postponing its exercise of

16  jurisdiction). The court may not invoke abstention to dismiss or remand the action. *Id.* at 731.

17  Here, Plaintiffs seek legal and declaratory relief, but Defendants argue that Plaintiffs' declaratory

18  relief Cause of Action is displaced and wholly derivative of the misappropriation claims.  While

19  Plaintiffs disagree, if this Court does dismiss Plaintiffs' declaratory relief cause of action, the

20  Court may not invoke abstention to dismiss this action.

21         Assuming the Court agrees that Plaintiffs may assert their declaratory relief cause of

22  action, the Court will need to consider the principles of abstention under the *Colorado River*

23  doctrine.  *Smith v. Central Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005)

24  provides the following helpful insight as to when such a dismissal or stay is appropriate:

25         We have consequently held that "the existence of a substantial doubt as to
           whether the state proceedings will resolve the federal action precludes the granting

26         of a [*Colorado River* ] stay." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d
           908, 913 (9th Cir.1993). "[E]xact parallelism" between the state and federal

27         proceedings is not required, *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th
           Cir.1989); however, any substantial doubt is sufficient to preclude a stay:

28

1

2

3

4

> When a district court decides to dismiss or stay
> under *Colorado River,* it presumably concludes that the parallel
> state-court litigation will be an adequate vehicle for the complete
> and prompt resolution of the issues between the parties. *If there is
> any substantial doubt as to this,* it would be a serious abuse of
> discretion to grant the stay or dismissal at all....

5

6

7

8

> *Intel,* 12 F.3d at 913 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury
> Constr. Corp.,* 460 U.S. 1, 28, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *see
> also Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 277, 108
> S.Ct. 1133, 99 L.Ed.2d 296 (1988) (quoting *Moses H. Cone,* 460 U.S. at 28, 103
> S.Ct. 927) (district court may enter a *Colorado River* stay "only if it has full
> confidence that the parallel state proceeding will 'be an adequate vehicle for the
> complete and prompt resolution of the issues between the parties.' ").

9   Further, *Colorado River* doctrine abstention is only appropriate under "exceptional

10  circumstances." *Colorado River*, 424 US at 813.  A federal court carefully balances a number of

11  factors to determine whether it should stay proceedings: (1) which court first assumed jurisdiction

12  over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid

13  piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal

14  law or state law provides the rule of decision on the merits; (6) whether the state court

15  proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum

16  shopping; and (8) whether the state court proceedings will resolve all issues before the federal

17  court. *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 978-979 (9th Cir. 2011).

18  Notably, the balancing of these factors is "*heavily weighted in favor of exercising jurisdiction*."

19  *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 US 1, 16 (1983) (emphasis added).  As

20  applied here, the factors do not favor abstention.

21       **1.  The State Court Action Will Not Resolve All Issues Between the Parties**

22       Temujin Delaware filed a state court action in Santa Clara County Superior Court against

23  three defendants – Ariel Abittan, Benjamin Fisch, and Charles Lu – alleging various causes of

24  action against them for actions such as the usurpation and interference with and control of access

25  to company assets, including its social media accounts, as well as breaches of Fisch and Lu's

26  agreements with Temujin Delaware (the "State Court Action").  Plaintiffs First Amended

27  Complaint in the State Court Action asserts causes of action for breach of contract, violation of

28  Cal. Penal Code § 502(c), conversion, and breach of fiduciary duty.  None of those causes of

---

18

1    action are asserted in this case.  Further, in this case, Plaintiffs assert causes of action for DTSA,

2    trade libel, and unfair competition, none of which are asserted in the State Court Action.

3    Additionally, in this case, Plaintiffs named nine defendants, only two of whom are defendants in

4    the State Court Action – Fisch and Lu.  Much of the focus of the complaint in the State Court

5    Action is on Fisch and Lu's breaches of their agreements to Temujin Delaware, which are not

6    specifically at issue here.  Such breaches include, for example, Lu's refusal to provide credentials

7    to access Temujin Delaware's various social media accounts, including Twitter, Youtube,

8    Medium, Telegram, and Discord (*see* Complaint, ¶¶ 28-30).  In sum, while the State Court Action

9    is premised upon the past harm Lu and Fisch caused to Plaintiffs while with Temujin Delaware,

10   the Complaint here seeks relief based upon the continuing and future harm that the various

11   defendants, including new Defendants Translucence, Bünz, McCarty, Krell, Cortina, Chen, and

12   Xiong are causing to the Plaintiffs.  As such, the State Court Action is not substantially similar to

13   this action, and cannot "be an adequate vehicle for the complete and prompt resolution of the

14   issues between the parties."  *Smith*, 418 F.3d at 1033.  This action involves different defendants

15   with different claims.

16        **2.  The *Colorado River* Factors Do Not Support Dismissal.**

17        Defendants are mistaken in their assertion that the other *Colorado River* doctrine factors

18   weigh in favor of dismissal.

19             **a.  First Factor**

20        The first factor – which court first assumed jurisdiction over any property at stake – is not

21   relevant in this dispute.

22             **b.  Second Factor**

23        The second factor is whether the inconvenience of the federal forum is "*so great* that

24   abstention is warranted." *Kelly Investment, Inc. v. Continental Common Corp.*, 315 F3d 494, 498

25   (5th Cir. 2002) (emphasis added) (witnesses' inconvenience in having to travel to testify in both

26   courthouses not enough); *Saucier v. Aviva Life & Annuity Co.*, 701 F3d 458, 463 (5th Cir. 2012)

27   (where federal and state courts are in same geographic location, convenience factor weighs

28   against abstention). Here, the federal court and the state court are in the same geographic location,

1   so there can be no credible assertion that this federal court is an inconvenient forum.  As such,

2   this factor weighs heavily against abstention.

3           **c.   Third Factor**

4           Defendants assert that because there are some overlapping defendants in this action and

5   the State Court Action, this constitutes "piecemeal litigation" and risks "inconsistent rulings."

6   But possibility of inconsistent rulings on the same issues does not support abstention because the

7   first-rendered judgment will be res judicata in the other proceeding. *Kelly Inv., Inc. v. Continental*

8   *Common Corp.*, 315 F.3d 494, 498 (5th Cir. 2002).  Additionally, avoiding piecemeal litigation is

9   not sufficient reason by itself for a federal court to refuse to exercise its jurisdiction; rather,

10  abstention is proper "only when there is evidence of a strong *federal policy* that all claims should

11  be tried in the state courts." *United States v. Morros*, 268 F3d 695, 706-707 (9th Cir. 2001)

12  (emphasis added).  Here, there is no support for the assertion that Plaintiffs' claims should be

13  tried in the State Court Action, especially considering Plaintiffs' different causes of action in this

14  action.  Notably, Defendants continually refer in their Motion to the action that Plaintiffs filed in

15  San Francisco Superior Court against the Defendants, but neglect to mention that Plaintiffs

16  dismissed that case about a month after filing it, without any attempts at service.

17          **d.   Fourth Factor**

18          Defendants also assert that because the State Court Action was filed first and has

19  "progressed significantly more than this action," this factor weighs in favor of dismissal.  As an

20  initial matter, this comparison cannot be made because of the different defendants and claims at

21  issue between the State Court Action and this action.  Further, the State Court Action pleadings

22  are not even at issue yet.  Contrary to Defendants' assertion, discovery has barely begun in the

23  State Court Action, and no depositions have taken place.  This factor does not weigh in favor of

24  dismissal here.

25          **e.   Fifth Factor**

26          Defendants further assert that California law applies to the "core claims in both the State

27  Action and this action," (Motion, 19:16-17) but the existence of state law issues by itself does not

28  outweigh a federal court's obligation to provide a complete and prompt resolution of all claims,

OPPOSITION TO DEFENDANTS' MOTION TO        20
DISMISS

state and federal. *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F3d 966, 980-981 (9th Cir. 2011) (the presence of state law issues weighs in favor of stay only in rare circumstances). Those rare circumstances do not exist here, especially where there is a DTSA claim over which the federal court has original jurisdiction. 18 U.S.C. § 1836(c).

### f.  Sixth Factor

Defendants also assert that the state court can adequately protect Plaintiffs' DTSA rights because they are "substantially similar" to Plaintiffs' UTSA claim. Motion, 20:2. But the fact remains that the DTSA is a different claim over which the federal court has original jurisdiction. 18 U.S.C. § 1836(c). Indeed, Plaintiffs are presently unaware of any California appellate court case interpreting the DTSA. Thus, Plaintiffs assert that Defendants have no basis to allege Plaintiffs' federal rights will be adequately protected if this action is dismissed.

### g.  Seventh Factor

Defendants accuse Plaintiffs of "forum-shopping" and assert that Plaintiffs' actions merit abstention. But again, Plaintiffs disagree this case is substantially similar to the State Court Action, and reiterate that the action filed in San Francisco County Superior Court has been dismissed.

### h.  Eighth Factor

Finally, Defendants assert that the State Court Action will resolve all issues and thus this factor weighs in favor of abstention. Not so. As stated above, this action involves different defendants with different claims. There can be no "comprehensive disposition" of the issues in this case (Motion, 22:22) by resolution of the State Court Action. As such, this factor also weighs against abstention.

In conclusion, it is inappropriate to dismiss this case for the aforementioned reasons discussed above.

### H.  It Is Inappropriate to Stay this Case.

Defendants argue that if the Court is not inclined to dismiss this action, it should instead stay the action. But staying the action is inappropriate for the same reasons the Court should not dismiss the action. Federal courts have a "virtually unflagging obligation" to exercise the

OPPOSITION TO DEFENDANTS' MOTION TO                     21
DISMISS

1    jurisdiction conferred upon them, and *Colorado River* abstention is appropriate, therefore, only

2    under "exceptional circumstances." *Colorado River*, 424 US at 813.  For the reasons stated above,

3    those exceptional circumstances simply do not exist here.

4         When a court does consider whether a pending proceeding should be stayed, it weighs

5    competing interests, including (1) the possible damage which may result from the granting of a

6    stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and

7    (3) the orderly course of justice measured in terms of the simplifying or complicating of issues,

8    proof, and questions of law which could be expected to result from a stay. *Lockyer v. Mirant*

9    *Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).  Defendants argue the consideration of those factors

10   here weighs in favor of a stay. Not so.

11        Defendants assert that Plaintiffs will suffer no damage from a stay, but Plaintiffs seek

12   different relief against additional defendants in this case than in the State Court Action.  Plaintiffs

13   cannot "continue pursuing" these claims in the State Court Action if this case is stayed, as

14   Defendants so assert.

15        Defendants also assert that they will suffer hardship and inequity absent a stay.  But since

16   the claims and defendants are different, that cannot possibly be true.

17        Finally, Defendants assert that, "[a]bsent a stay, this Court will be forced to adjudicate the

18   very same issues that will be adjudicated in the State Court Action (and risk making rulings

19   inconsistent with those issued by the state court)." Motion, 25:5-7.  But as stated above, there are

20   different issues in this case.  Further, as stated above, the possibility of inconsistent rulings on the

21   same issues does not support abstention because the first-rendered judgment will be res judicata

22   in the other proceeding. *Kelly Inv., Inc. v. Continental Common Corp.*, 315 F.3d 494, 498 (5th

23   Cir. 2002).  As such, there is simply no legitimate reason to stay this action.

24                            **V.    CONCLUSION**

25        For the foregoing reasons, Defendants' Motion to Dismiss should be denied.  This action

26   should be allowed to proceed.  If the Court grants any portion of Defendants' Motion to Dismiss,

27   Plaintiffs should be allowed to amend their Complaint to resolve any potential pleading

28   deficiencies.

OPPOSITION TO DEFENDANTS' MOTION TO          22
DISMISS

1

2   DATED:  April 1, 2022                    HANSEN LAW FIRM, P.C.

3
                                             By: _____/s/ Craig A. Hansen_____
4                                                      Craig A. Hansen

5                                            Attorneys for Plaintiffs
                                             Temujin Labs Inc., a Delaware corporation, and
6                                            Temujin Labs Inc., a Cayman Islands corporation.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' MOTION TO          23
DISMISS